In re MASTERS, INC., Debtor.

Frank T. SACCURATO, Jr., creditors' trustee of Mars Stores, Inc., Gaynes Department Stores, Inc., Mars Leasing Co., Inc. and Big Value Outlets, Inc., Appellant,

v.

MASTERS, INC., Debtor–Appellee.

No. CV 92–3837.

United States District Court,
E.D. New York.

Dec. 18, 1992.

Parker, Chapin, Flattau & Klimpl by Barry J. Brett, New York City, for Masters, Inc.

Cohn, Roitman & Kelakos by Michael B. Roitman, Boston, MA, Kaye, Scholer, Fierman, Hays & Handler by Lisa M. Solomon, New York City, for Saccurato, et al.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

On October 24 and December 17, 1990, the late Hon. James N. Gabriel, Chief Judge of the United States Bankruptcy Court for the District of Massachusetts, conducted a trial in an adversary proceeding between Mars Stores, Inc. ("Mars" or "appellant"), and Masters, Inc. ("Masters" or "appellee") in which Mars, who had previously filed for Chapter 11 bankruptcy protection, sought to recover in excess of $5,000,000 from Masters. On December 18, 1990, prior to the conclusion of that trial, Mars and Masters reached a proposed settlement agreement that called for, *inter alia*, Masters to pay $425,000 to Mars and both parties to issue releases. Judge Gabriel directed Mars to prepare a stipulation of settlement and to give notice to the parties on the service list.

On February 22, 1991, before notice was sent out, payment made, or releases issued, Masters filed for bankruptcy under Chapter 11 in the Eastern District of New York. On August 8, 1991, the Creditors' Trustee for Mars filed a claim in the Masters Bankruptcy case for the full amount at issue in the Mars/Masters adversary proceeding. On February 4, 1992, Masters filed an objection to that claim, and on June 8, 1992, the Hon. Dorothy Eisenberg, Bankruptcy Judge for the Eastern District of New York, issued a decision holding that Judge Gabriel had properly granted final approval to the Mars/Masters proposed settlement agreement and that Mars had only an unsecured claim for $425,000 against Masters. Now before this Court is an appeal by Frank R. Saccurato, Jr., Creditors' Trustee of Mars Stores, Inc., from Judge Eisenberg's June 8, 1992 decision. For the reasons stated below, this Court disagrees with Judge Eisenberg's decision regarding

Judge Gabriel's approval of the settlement agreement, but affirms the decision based on Judge Eisenberg's alternate holding of equitable estoppel.

## I. BACKGROUND

The following material facts are not disputed by the parties. Both Judge Gabriel, who had helped Mars and Masters reach their proposed settlement agreement, and Mars' Creditors' Committee, which had intervened in the Massachusetts adversary proceeding, were fully cognizant of the terms of the proposed settlement agreement and of the merits of the underlying case. The proposed agreement, which Judge Gabriel read into the record, stated, *inter alia,* that Masters would withdraw its $2,700,000 claim as an unsecured creditor against Mars, withdraw its objection to the substantive consolidation of the Mars bankruptcy case, withdraw its objection to confirmation of Mars' bankruptcy reorganization plan and would pay Mars $425,000.

Masters immediately withdrew its claim as an unsecured creditor and withdrew its objection to the substantive consolidation of the Mars bankruptcy case.[1] At the same time that Judge Gabriel put the proposed settlement agreement on the record, he ordered the release of a $3.4 million dollar letter of credit that Masters had put up as security in that case and he ordered Mars to notify the parties on the service list as follows:

> Yes. Well, I was also going to add that one of the parties would, please, take it upon themselves to prepare an order or a stipulation—whichever the parties would prefer—so that it can be noticed out to the service list. We have a relatively small service list. I think that the debtor should notice the settlement out to the service list.

Transcript of adversary proceeding, Masters, Inc. v. Mars Stores, Inc., Trial Day 3 at p. 4.

1. Masters subsequently withdrew its objection to the Mars reorganization plan.

2. Bankruptcy Rule 9019(a) provides: "On motion by the trustee and after a hearing on notice to creditors, the United States Trustee, the debt-

Mars now contends that Judge Gabriel's purpose in directing it to give notice to the parties on the service list was to comply with Bankruptcy Rule 9019(a) which requires approval by the bankruptcy judge, on motion and after notice, of a proposed settlement agreement in a bankruptcy action.[2] The service list includes "interested parties," creditors of Mars who, although represented by the Creditors' Committee, sought separate representation in the Mars bankruptcy case. Mars argues that Judge Gabriel never approved, and indeed, could not have approved the proposed settlement agreement, because no motion was made and Mars never sent out the required notice. Mars also argues that because both Mars and Masters had significant obligations to perform under the proposed settlement agreement, that agreement is an executory contract that Masters can now either assume in full or reject. *See* 11 U.S.C. § 365(a).

Masters responds that Judge Gabriel's instruction that notice be given to the parties on the service list was for informational purposes only; Judge Gabriel approved the proposed agreement by reading its terms into the record and then ordering the release of Masters' letter of credit; the agreement is a binding contract; and the only significant act that remains to be done in relation to the agreement is the payment of $425,000, thus making the contract nonexecutory. *See In re Leibinger–Roberts, Inc.,* 105 B.R. 208, 212–13 (Bkrtcy.E.D.N.Y. 1989) ("a contract is not executory where the only obligation of a party to a contract is the payment of money").

## II. DISCUSSION

In general, debtors cannot bind their estates to compromises absent bankruptcy court approval, *see, e.g., Reynolds v. C.I.R.,* 861 F.2d 469, 473 (6th Cir.1988) ("[i]n bankruptcy proceedings ... any compromise between the debtor and his credi-

or and indenture trustees as provided in Rule 2002 and to such other entities as the court may designate, the court may approve a compromise or settlement."

tors must be approved by the court as fair and equitable"), and approval can be given only on motion and after 20 days notice to creditors. Bankruptcy Rules 9019(a), 2002(a); *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 390, 396 (Bkrtcy.E.D.Pa.1987).

In her Order of June 8, 1992, Judge Eisenberg found that "[t]he clear purpose of Rule 9019 is to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court." *In re Masters, Inc.*, 141 B.R. 13, 16 (Bkrtcy.E.D.N.Y.1992). Consequently, she found that Rule 9019 is not applicable to the Mars/Masters settlement agreement because that agreement was made in open court after two days of trial and with all relevant parties, including Mars' Creditors' Committee, present and assenting. *Id.* Following this analysis, she held that the agreement was binding and non-executory. *Id.* at 17.

In support of Judge Eisenberg's decision, appellee contends that the "interested parties" on the service list have no standing to appeal an approval of a settlement agreement, *see In re Thompson*, 965 F.2d 1136, 1142 (1st Cir.1992), and that, in any event, notice can be dispensed with when all interested parties are present. *See In re Sherman Plastering Corp.*, 340 F.2d 915, 918 n. 2 (2d Cir.1965) (construing § 27 of the Bankruptcy Act, a predecessor to Rule 9019); *In re Kansas City Journal–Post Co*, 144 F.2d 816, 817 (8th Cir.1944) (same); *In re Patel*, 43 B.R. 500, 503 (N.D.Ill.1984) (bankruptcy judge can waive notice requirement under Rule 2002(a)(3) "for good cause shown"). Appellee also suggests that approval on notice pursuant to Rule 9019(a) would be a cumbersome procedure in the midst of a trial. *But see In re Thompson*, 965 F.2d at 1139–40 (the trial court approved an in-court settlement on notice, in compliance with Rule 9019(a)); *In re Taylor*, 59 B.R. 176, 177 (Bkrtcy.S.D.Texas 1986) (notice of settlements must be given unless national security is involved).

■ In exercising its discretion regarding the approval of a compromise, a bankruptcy court must determine whether the compromise is reasonable considering such factors as the likelihood of success in the litigation, the complexity and cost of the litigation, and the paramount interests of the creditors. *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir.), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983). The basis for the court's determination to approve a compromise must be clearly set forth in the record. *In re American Reserve Corp.*, 841 F.2d 159, 162 (7th Cir.1987). Although Judge Gabriel neither explicitly stated on the record that he approved the proposed settlement agreement nor set forth any rationale for that alleged approval, appellees nevertheless argue that by ordering the release of Masters' $3.4 million letter of credit in conjunction with reading the terms of the proposed agreement into the record, he effectively indicated his approval.

■ This Court finds that by releasing the letter of credit, Judge Gabriel intended to give the proposed settlement agreement at least tentative approval, though perhaps not final approval. It is entirely possible that when he directed Mars to give notice to the parties on the service list, Judge Gabriel was contemplating the requirements of a formal approval of the settlement agreement pursuant to Rule 9019(a). In any event, regardless of Judge Gabriel's intent, this Court finds that because the notice requirements of Rule 9019(a) were applicable and were never complied with, the Mars/Masters settlement agreement did not receive the final approval of the Massachusetts bankruptcy court. *See In re Zerodec Mega Corp.*, 47 B.R. 304, 309 (Bkrtcy.1985) ("since there was no notice disseminated to creditors on the parties' intended entry into the accord, nor order approving such entry, the accord is invalid and no settlement or compromise was achieved due to the requirements of Bankruptcy Rule 9019(a)"), *aff'd in part and rev'd in part*, 60 B.R. 884 (E.D.Pa.1985).

■ The purpose of the procedural rules governing notice to creditors is to allow those parties with a pecuniary interest in the settlement to have an opportuni-

ty to be heard and to object if they find it unsatisfactory. *In re Neuman,* 103 B.R. 491, 500 (S.D.N.Y.1989), *rev'd on other grounds,* 124 B.R. 155 (S.D.N.Y.1991). Where creditors have expressed sufficient interest in a bankruptcy case to have their names added to the service list, this Court finds that such creditors have a right to actual notice pursuant to Rule 9019(a) and to make objections to any proposed settlement agreement prior to final approval by a bankruptcy judge.

 The notice requirement in Rule 9019(a) cannot be ignored merely because a proposed settlement is made in open court during trial rather than on papers submitted to the bankruptcy court prior to trial. Certainly the plain language of the Rule makes no such distinction. *Cf. In re Thompson,* 965 F.2d at 1139–40. Moreover, notice to the Creditors' Committee does not waive notice to the individual creditors on the service list, nor can a bankruptcy judge eliminate the Rule 9019(a) notice requirements even if he believes that his ultimate approval of the proposed agreement is a virtual certainty. Accordingly, because various Mars' creditors have never been notified of the proposed Mars/Masters settlement agreement, this Court finds that the Massachusetts bankruptcy court never formally approved that agreement.

 Under most circumstances, the preceding analysis would lead this Court to conclude that to the extent the Mars/Masters proposed settlement agreement gave rise to a contract, such contract would be executory in nature. In the instant case, however, Judge Eisenberg also held that Mars, having received many benefits as a result of the settlement agreement, is now equitably estopped from claiming that the settlement agreement is merely executory due to its own failure to give notice to the parties on the service list. Under Massachusetts law, the factors giving rise to the doctrine of equitable estoppel are:

"(1) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made. (2) An act or omission resulting from the representation, whether actual or by conduct by the person to whom the representation is made. (3) Detriment to such person as a consequence of the act or omission."

*Cellucci v. Sun Oil Co.,* 2 Mass.App. 722, 320 N.E.2d 919 (1974) (citations omitted), *aff'd,* 368 Mass. 811, 331 N.E.2d 813 (1975); *see also In re Roundabout Theatre Co., Inc.,* 131 B.R. 14, 16–17 (S.D.N.Y.1991) (citation omitted).

 In the instant case, immediately after Judge Gabriel read the terms of the proposed settlement agreement into the record, Masters withdrew: (1) its motion to dismiss Mars' claims against Masters; (2) its claim against Mars as an unsecured creditor; and (3) its objection to the substantive consolidation of the Mars bankruptcy case. Mars benefited from these actions by being able to proceed without these obstacles to the confirmation of its reorganization plan.

This Court finds that Masters' acts were made either with the understanding that the proposed agreement had been effectively approved by Judge Gabriel (such understanding having been induced by Judge Gabriel's order calling for the immediate release of Masters' letter of credit and by Mars' apparent endorsement of that order), or that Judge Gabriel's approval was a mere formality which would be quickly effected following Mars' preparation of the required stipulations and noticing the parties on the service list. Under the facts of this case, it seems virtually certain that if Mars had timely undertaken its duties in preparing the required stipulations and noticing the interested parties, the Massachusetts bankruptcy court would have formally approved the proposed settlement agreement. Accordingly, this Court agrees with Judge Eisenberg that Mars, "[h]aving received many benefits of its bargain, ... is now equitably estopped from denying that the settlement was final in all respects." *In re Masters,* 141 B.R. at 17.

To the extent that Appellants contend that Masters is not entitled to an equitable remedy because it represented to the Massachusetts bankruptcy court that the re-

lease of its letter of credit would not prejudice Mars, Judge Eisenberg found that Mars "has not produced any evidence that [Masters] did not act in good faith at the time of the settlement agreement." *Id.* at 18.

### III. CONCLUSION

Accordingly, for the foregoing reasons, this Court affirms the bankruptcy court's Order of June 8, 1992.

SO ORDERED.